# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEW VISION PHOTOGRAPHY<br>  PROGRAM, INC. ("NVPP")<br>6200 Addison Road<br>Seat Pleasant, Maryland  20743<br>       Plaintiff<br>and<br>Albert Price, individually and in<br> his official capacity as Service Provider<br>6200 Addison Road<br>Seat Pleasant, Md.  20743<br>    v.<br><br>DISTRICT OF COLUMBIA<br> Serve:  Mayor Vincent Gray<br> Serve: Irvin B Nathan, DC Attorney General<br>441 4th Street, N.W.<br>Washington, D.C.  20001<br>v<br>CATHY ANDERSON,  Asst. Director DDS<br>individually and in her official capacity<br>DC Dept of Disability Services<br>1125 15th Street, N.W.  Fifth Fl.<br>Washington, D.C.  20005<br>v<br>SHERIN MOSSES, Case Mgr, DDS<br>individually and in her official capacity<br>DC Dept of Disability Services<br>1125 15th Street, N.W.  Fifth Fl.<br>Washington, D.C.  20005<br>    Defendants. | Civil Action No.<br>Judge |

### COMPLAINT FOR DAMAGES AGAINST DISTRICT OF COLUMBIA
**(Selective and Discriminatory Enforcement Disabilities Administration Rules Violations)**

### Nature of Action

1. The original is suit for declaratory judgment, preliminary and permanent injunctive relief, and damages for Defendants violations of the Age Discrimination in Employment Act (29 USCS § 621, et seq.) as amended (hereinafter referred to as "ADEA"), and

for retaliation under the District Columbia Human Rights Act, D.C. Code §§2515 and 1-2532, and for retaliation under D.C. Code §1-2525. The action was also brought for violations of Plaintiff's civil rights under §42 U.S.C 1983.  There is also diversity of citizenship.

2.      **This action was brought by an** Elderly Black male provider of disabilities services to individuals  in Washington, D.C.   The District of Columbia ("District") has engaged in selective and discriminatory enforcement of its Disabilities Services Administration policies by threatening to close service providers who fail the D.C. Department of Disabilities Services' Provider Certification Review ("PCR") by arbitrarily implementing the PCR and by arbitrarily scheduling selected providers for PCR review.  Before closing the providers, the District placed the subject providers on its "DO NOT REFER LIST" and/or its "PROVIDER WATCH LIST", and stopped sending individuals with disabilities to the subject providers.  The District failed to take less drastic and less discriminatory measures to ensure the health and safety of provider community and importantly, the rights of individuals with intellectual and developmental disabilities.   For example, the majority of the twenty (20) providers on the DO NOT REFER LIST are elderly and/or African-American; 14 out of the twenty (20) providers have Evans class members; and lastly six (6) out of the six (6) providers on the PROVIDER WATCH LIST have Evans class members.  It is beyond reasonable argument that the result of the PCR reviews, disparately impacts Elderly and African American providers who have Evans[1] class members. These unlawful actions by the District required the additional removal of control of the individuals from the Plaintiff and similarly situated DDS services providers, by discriminatorily

---

1 Evans Class members refers to the unresolved matter <u>Evans v. Fenty</u>, Case No. 76-293 (ESH), USDC-DC. Herein it appears that the District is attempting use the PCR review process to obtain results with the noted individuals on the DO NOT REFER LIST AND PROVIDER WATCH LIST, which it has been unable to obtain from this Court.

implementing the PCR and through lack of due process.

3. In addition to the aforementioned, Defendant has further unlawfully and unfairly burdened Plaintiff by a) unlawfully removing individuals from without proper notice and in violation of DDS' written policy and procedures; b) by refusing to consider, utilize or even acknowledge NVPP's policy for discharge individuals as per DDS rules; and c) by threatening to remove five (5) more individuals from NVPP and thereby unlawfully crushing NVPP financially.

4. Defendant District of Columbia has discriminated on the basis of age, disability, and national origin by maintaining a substandard PCR review policy and system which unduly burdens disabilities services providers that have a high percentages of elderly and African American owners and Evans Class member individuals with disabilities.  Furthermore, the Defendants have retaliated against Plaintiff in violation of the Employment Age Discrimination Act and D.C. Code 1-2525.  **Defendants acts have also caused Plaintiff to suffer two strokes**.

## Jurisdiction and Venue

5. Jurisdiction is conferred on this Court by 29 U.S.C.S. §621, §626 (c), et seq., 42 U.S.C. 1983, 28 U.S.C. § 1331 **and** § 1332; §28 U.S.C. §1343, and supplemental jurisdiction over the remaining claims exist under 28 U.S.C. §1367.  Also, a federal question is presented.

6. Venue is proper in this district under 28 U.S.C. §1391, because the claims arose in the District of Columbia, and the Defendant resides and does business in District of Columbia.

## Plaintiffs

7. At all times relevant hereto, the Plaintiff, NEW VISION PHOTOGRAPHY PROGRAM, INC.  (hereinafter "NVPP") is a Maryland corporation doing business in the District of Columbia over ten (10) years by providing locally, nationally and internationally

known exceptional and innovative services to individuals with intellectual and developmental disabilities. Plaintiff NVPP has at all times been qualified, licensed and capable of performing its job duties on behalf of Defendant.

8. At all times relevant hereto, Plaintiff Price is a Black Male over forty (40) years of age, residing in Maryland and employed by the District via the Medicaid Provider Agreement.

### Defendants

9. The District of Columbia ("the District") is a municipal corporation, operating at times thru the DC Department of Disability Services ("DDS") and both Cathy Anderson and Sherin Mosses are employees of the DDS.

10. Upon information and belief and at all times relevant hereto, Defendant as the municipal government, along with its employees, have the authority to hire, fire, and discipline the providers of disability services, including Plaintiff herein.

11. Upon information and belief and at all times relevant hereto, Defendant District is an employer as defined by the D.C. Human Rights Act of 1977, D.C. Code §2- 1401.02 ( 2007).

### BACKGROUND FACTS APPLICABLE TO ALL COUNTS

12. On December 15, 2012, NVPP appealed the findings of the August 2012 Provider Certification Reviews. Concurrently, on July 15, 2013, Defendants began attempting to remove individuals from NVPP via circulating unfair and misleading information regarding NVPP, for which Mr. Price wrote to DDS (Mr. Morris) requesting that DDS immediately ceast this conduct because it has the effect of instigating disruptive behavior in NVPP individuals.

13. On September 24, 2013, the NVPP Appeals hearing began before ALJ Mary Masulla.

14, As of October 7, 2013, DDS (Kwame King) was continuing to attempt to unlawfully

remove individuals from NVPP. On October 10, 2013, Defendant Mosses, suddenly and without warning, arbitrarily removed disabled individual-L.W. from NVPP, thereby depriving NVPP of contract fees for both 1) job readiness and 2) supportive employment, aggregating over $900/wk.

15. Again on October 14, 2013, Mr. Price wrote to DDS (Mr. Morris) informing him of LW's removal and pleading that DDS stop unfairly and unlawfully removing individual prior to a ruling by ALJ Masulla. On October, 15, 2013, DDS (Mr. Morris) responded and indicated he would "meet with DDA staff today". On October 17, 2013, Defendant Anderson, offered a sophomoric reply stating that "individuals are free to come and go from any program as they desire". On October 20, 2013, NVPP filed a Motion for TRO with ALJ Masulla, and on October 28, 2013, she opined that while she did not deny the merits of NVPP's Motion for TRO, she "did not have the authority to grant" NVPP relief. To date, DDS has not stopped this unlawful process, and as of today DDS is attempting to arbitrarily remove five (5) more individuals.

16. On **October 25, 2013, 5:25 p.m., after closing**, Defendant Mosses, again without warning, arbitrarily removed individual-EC, stating that EC's last day would be TODAY, and again taking revenue from NVPP. Significantly, neither LW nor EC ever noted nor mentioned any desire to leave NVPP, and Defendants have not and cannot produce any such evidence.

17. On November 13, Plaintiff as contemplated by DDS policy #POL006 and procedure #PRO011, forwarded to Defendant Anderson, proposed NVPP policies with exhibits, to clear up any ongoing misunderstandings. That same day November 13, 2013, **in less than two (2) hours** Defendant Anderson coldly rejected NVPP's proposed policies, and simply left Mr. Price to boil in his own frustration. Defendant Andersons' conduct clearly intentionally violates DDS policy #POL006 and procedure #PRO01, by not providing the organized person centered process.

18. The "Do Not Refer List" has a total of 20 units, approximately 14 of which are owned by elderly providers. Seventy percent of the providers have Evans class members. .

19. The "Provider Watch List" has 6 units, approximately 4 of which are owned by elderly providers. One Hundred percent of the providers have Evans class members.

20. The total population of all the census tracts in which the disability waiver services providers operate is 15%  Elderly (over 60 years old).

21.  Upon information and belief the DO NOT REFER LIST based on PCR review results had a disparate impact on those employee/providers over forty years of age who are employed by DDS.

22. As a result of the District's actions, the Plaintiff has no adequate remedy at law and has suffered, and is continuing to suffer, and will in the future, suffer irreparable pecuniary and injury including, a deprivation of its civil rights and rights to equal waiver services opportunities regardless of national origin and age, a deprivation of its to the provision of services in D.C., as well as economic loss, humiliation, embarrassment and emotional distress, as well as being deprived of Due Process; all of which  is a violation of the Age Discrimination in Employment Act , the DC Human Rights Act, D.C. Code §45-2584, and §42 U.S.C. 1983.

23. In engaging in the unlawful conduct as described, the District acted intentionally maliciously and with callous and reckless disregard of the rights of Plaintiff in violation of the Age Discrimination in Employment Act and District of Columbia Human Rights Act.

### Count I
**(Violation of Age Discrimination in Employment Act)**

24.  Plaintiffs repeat the allegations of paragraphs 1 through 23.  The District' actions as

described discriminate against Plaintiff on the basis of age and national origin and in further violation of 29 U.S.C. §§623(a)(1) for age; and 42 U.S.C. 1983 for national origin.

## Count II
### (Violation of D.C. Code §1-2515 and §1-2532)

25. Plaintiff repeats the allegations of paragraphs 1 through 24. The District' actions described discriminate on the basis of age and national origin in violation of the D.C. Human Rights Act, D.C. Code §§1-2515 and 1-2532, to effect the discrimination which is sited, provoking the economic calamity and three (3) heart attacks suffered by Plaintiff, a Black male.

## Count III
### (Violation of D.C. Code § 1-2525)

26. Plaintiffs repeat the allegations of paragraphs 1-26. The District's actions described above constitute retaliation in violation of D.C. Code § 1-2525.

## Count IV
### (Violation of Civil Rights 42 U.S.C. §1983)

27. Plaintiff repeats the allegations of paragraphs 1 through 26.

28. The U.S. Constitution, pursuant to the Fifth Amendment, secures that the public's and Plaintiff's right to due process and be free from civil judgments based on inaccurate or improper unreliable evidence manufacture by District employees who were improperly overseen, trained, and controlled in specifically how they carry out their functions. These rights were all violated.

29. The District failed to properly oversee, train, and control the manner in which the DDS administered discharges from one provider program to another program, of individuals with intellectual and developmental disabilities from certified Medicaid Providers of Services.

30. The District failed to properly oversee, train, and control the manner in which the DDS

administered Provider Certification Reviews ("PCR's") related to individuals with intellectual and developmental disabilities to Medicaid Providers of Waiver Services.

31. The DDS, acting under the color of District of Columbia law, has a custom, policy, or practice of failing to oversee, train, and control its DDS Directors, DDS Service Coordinators, and PCR TEAM members on the proper PCR testing of Medicaid Waiver Services Providers and proper procedures for discharge of individuals, as evidenced by its DO NOT REFER LISTS.

32. The District's custom, policy, or practice, inaction or inadequate action caused Plaintiff to suffer injury, including but not limited to three (3) heart attacks; loss of weekly revenue due to improper removal of individuals from NVPP, and the ongoing continuing threat of removal of individuals from NVPP without any request by the individuals.

33. The failure to oversee, train and control its employees to properly PCR test Waiver Services Providers and properly discharge individuals from program to program results in numerous improper PCR sanctions and improper individual's discharges; reflecting injuries so recurring as to tend to show a deliberate intentional/reckless indifference to the consequences.

34. The District's disregard of the failure to oversee, train, and control its employees, resulting in improper PCR Test results and improperly discharged individuals demonstrates a deliberate indifference to Plaintiff's Fifth Amendment Constitutional right to due process of law.

35. As a direct result of the District's deliberate indifference to properly overseeing, training and controlling its employees, resulting in improper PCR's and individual discharges, Plaintiff has illegally lost individuals and lost related program revenue; wrongfully sanctioned to DO NOT REFER status, and forced to suffer emotional distress **[had three (3) heart attacks],** mental anguish, and suffered loss of reputation.

## Count V
### (Breach of Contract)

36. Plaintiff repeats the allegations of paragraphs 1 through 35.

37. On May 12, 2003, Plaintiff and Defendant executed a Medicaid Provider Agreement ("MPA"), and Plaintiff is therefore a Medicaid Provider of Services.

38. Pursuant to their MPA contract with the District, Defendants agree to reimburse providers for eligible Medicaid recipients, Plaintiff shall submit invoices for payment, and Defendants agreed to make prompt payments to Plaintiff.

39. Defendants have ceased making payments for LW and EC; and failed and/or delayed processing Plaintiff's requests for payment for the last nine (9) months.

## Count VI
### (Intentional Infliction of Emotional Distress)

40. Plaintiff repeats the allegations of paragraphs 1 through 39.

41. By their actions the Defendants have intended to cause emotional distress to the Plaintiff or know or should have known that emotional distress [ie. Three (3) heart attacks] was the likely result of their conduct.

42. The Defendants conduct was so extreme and outrageous, with a clearly near death result, strokes to Mr. Price, that the result was intentional, reckless, malicious and forseeable.

43. As a result of Defendants actions, Mr. Price has undergone three (3) heart attacks, and has clearly suffered severe emotional distress.

### Prayer for Relief

44. WHEREFORE, the Plaintiffs prays that this Court grant the following relief:

    (a) enter a declaratory judgment finding that the actions of the District violate

§42 U.S.C. 1983, § 623 of the Age Discrimination in Employment Act, § 1-2515; 1-2532 of the D.C. Human Rights Act, and §1-2525 [the anti-retaliation section], of the D.C. Code;

      (b)    enter a preliminary and permanent injunction directing the District to halt all PCR Reviews of Plaintiff, NVPP, and return individuals LW and EC to NVPP immediately,

      (c)    award compensatory damages in an amount to be determined by the jury that would fully compensate the Plaintiff for the intentional infliction of emotional distress, economic loss, humiliation, embarrassment, and mental and emotional distress that has been caused by the conduct of the defendant alleged herein **in an amount of THIRTY MILLION DOLLARS  ($30.000,000.00)**;

      (d)    award plaintiff its reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and D.C. Code §1-2556; and

      (e)    order such other relief as this Court deems just and equitable.

### Demand for Jury Trial

Pursuant to Fed. R. Civ. P. 38(b), the plaintiff demand a trial by jury of all issues triable by right.

Dated:  December 10, 2013

                                            /s/ Randy McRae  
                                       Randy McRae, Esq.  
                                       10640 Campus Way So., Ste. 110  
                                       Largo, Md.   20774  
                                       (202) 421-7983  
                                       Attorneys for Plaintiff